UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>– against –<br><br>SHAKEEM POWELL,<br><br>Defendant. | 15-CR-382<br><br>Statement of Reasons Pursuant to<br>18 U.S.C. § 3553(c)(2) |

**JACK B. WEINSTEIN**, Senior United States District Judge:

**APPEARANCES**

| | |
|---|---|
| **United States:** | **Lauren Howard Elbert**<br>**Marcia Maria Henry**<br>**Michael P. Robotti**<br>**Nomi Danielle Berenson**<br>United States Attorney's Office<br>Eastern District of New York<br>271 Cadman Plaza East<br>Brooklyn, NY 11201 |
| **Defendant:** | **Richard B. Lind**<br>Richard B. Lind, Esq.<br>880 Third Avenue<br>13th floor<br>New York, NY 10022 |

Table of Contents

I.   Introduction ........................................................................................................................ 1
II.   Investigation ..................................................................................................................... 2
III.   Arrest, Charge, and Guilty Plea ....................................................................................... 3
IV.   18 U.S.C. § 3553(a) Considerations ................................................................................ 5
   A.   Defendant's Background ............................................................................................ 5
   B.   Psychological Evaluation ........................................................................................... 7
V.   Legal Standards for Competence ..................................................................................... 9
   A.   Defendant's Competence to Enter a Plea of Guilty .................................................. 11
   B.   Practical Considerations ........................................................................................... 15
VI.   Sentence ......................................................................................................................... 17
VII.   Conclusion ..................................................................................................................... 18

## I. Introduction

Defendant was charged with a conspiracy to possess with intent to distribute one kilogram or more of heroin. A statutory minimum custodial sentence of 10 years applies. 21 U.S.C. § 846; 21 U.S.C. §841(a)(1); 21 U.S.C. § 841(b)(1)(A). After plea negotiations, he agreed to plead guilty to a lesser-included charge of conspiracy to distribute at least 100 grams of heroin, which carries a statutory minimum prison sentence of five years. 21 U.S.C. § 846; 21 U.S.C. §841(a)(1); 21 U.S.C. § 841(b)(1)(B); *see* Guilty Plea Transcript, July 11, 2016, ECF No. 252 ("Pleading Tr."), at 36:9-12. The court believed a five-year term was excessive, and that defendant lacked the competence to plead. Nevertheless, as explained below, it accepted the plea and sentenced defendant to five years in prison.

Defendant was a heroin addict and seller of small amounts, receiving drugs as part of his compensation. The large weight he was charged with was attributable to him in part on the government's theory of his participation in a drug conspiracy with a large organization ("DTO") distributing heroin in Queens, New York. There are 11 other defendants.

Expert psychiatric testimony revealed that, although he is competent to stand trial and, possibly, to enter a guilty plea, he is not able to meaningfully distinguish between the quantity of drugs he distributed and the relevant penalties. Defendant understands that distributing heroin is illegal, but his intelligence and understanding are too limited for him to appreciate that the quantity of heroin he is charged with as a conspirator would substantially increase the sentence.

His guilty plea was accepted and the mandatory five-year minimum sentence is imposed. But the court finds this result disquieting. The problem of overcharging faced here occurs repeatedly in our criminal justice system.[*] This defendant, with severe mental health problems, risks a significantly higher sentence if he proceeds to trial than if he pleads guilty; even though he does not fully comprehend the basis and effect of his plea.

## II. Investigation

An investigation commenced by Homeland Security ("HSI") and other law enforcement agencies in 2013 discovered that Mr. Powell, together with others, was a member of a gang called Paper Chasing Goons. Presentence Investigation Report, Nov. 9, 2016 ("PSR"), at ¶ 3. DTO leaders maintained access to stashes of narcotics and firearms; they distributed heroin to users through minor figures such as defendant. PSR at ¶¶ 3-4. His role was described accurately by a psychiatrist:

> THE WITNESS: . . . [T]he intellectual limitations, the tunnel vision, his inability to really understand what people, other than senior members, of this drug organization were doing . . . he was merely a conduit. He would not be somebody who would be able to make purchases, not someone who would be able to organize a drug organization. He wouldn't be trusted cutting drugs. . . . [H]e would never be trusted weighing drugs. This is someone who *merely was*

---

[*] An important factor in overcrowding is overcharging by prosecutors. *See, e.g.*, JOHN F. PFAFF, LOCKED IN: THE TRUE CAUSES OF MASS INCARCERATION AND HOW TO ACHIEVE REAL REFORM 234 (2017) ("We need to restrict prison growth on the front end (admissions) even more than on the back end (parole), which means we need to regulate prosecutors."). *But see id.* at 55 ("[F]ederal prosecutors are pursuing their own idea of justice, and their views are systematically less harsh than those which have been codified by Congress and desired by the president.").

> *a relay point* between people higher in the organization and the
> buyers of the drugs.

Hr'g Tr., Mar. 21, 2017 ("Mar. 21 Hr'g Tr."), at 27:22-28:7 (emphasis added).

Using a mobile telephone to control distribution, the DTO sold heroin from several stash houses. PSR at ¶¶ 4-5. Ms. Shavona Trappier, defendant's sister and a leader in the gang, maintained one of these stashes. *Id.* at ¶ 9. Essentially at his sister's direction, defendant transferred heroin to others. *Id.* at ¶ 5; Mar. 21 Hr'g Tr. at 22:15-21. Defense counsel accurately summarized defendant's intellectual limitations:

> MR. LIND: This is not to say that Mr. Powell was unable to recognize the nature of his actions at the time of the offense and its wrongfulness, rather his intellectual limitations, his psychiatric history, which notes long-standing clinical depression, his multiple suicide attempts, and his limited judgment and insight are likely to have contributed to his willingness to follow his sister's lead and participate in this crime.

Mar. 21 Hr'g Tr. at 26:6-13.

During a monitored telephone call, defendant confirmed that he was in the vicinity of a stash house and had arranged to sell heroin to a customer. PSR at ¶ 9. Law enforcement agents who surveilled the transaction observed defendant sell the customer one glassine, which contained considerably less than a gram of heroin. *Id.*; Hr'g Tr., Apr. 17, 2017 ("Apr. 17 Hr'g Tr."). Other calls revealed that defendant was arranging similar drug transactions over the phone and meeting customers to complete drug sales. PSR at ¶¶ 10-11.

### III. Arrest, Charge, and Guilty Plea

On June 10, 2015, defendant was arrested in his automobile by New York City police officers for selling heroin. *Id.* at ¶ 12. A search of defendant and his car revealed eight glassine envelopes of heroin and $23. *Id.* This possession is relevant to the instant offense because it was part of the DTO's course of conduct. *Id.*; U.S.S.G. § 1B1.3(a)(2). Treated solely as a seller rather

3

than as a member of a conspiracy, his total sales would possibly put him below any minimum charge, leaving the court free to sentence him to a shorter term.

HSI agents arrested him for the instant offense on July 8, 2015. PSR at ¶ 8. He has remained incarcerated since then. *Id.* at 1.

In December 2015, a grand jury returned an indictment charging defendant with conspiring to distribute and possess with intent to distribute one kilogram or more of heroin, an offense carrying a minimum term of imprisonment of 10 years. 21 U.S.C. § 846; 21 U.S.C. § 841(a)(1); 21 U.S.C. § 841(b)(1)(A).

In July 2016, defendant pled guilty before a magistrate judge to a lesser-included charge, one count of a conspiracy to distribute and possess with intent to distribute at least 100 grams of heroin, with a minimum term of imprisonment of five years. *See* 21 U.S.C. § 846; 21 U.S.C. § 841(a)(1); 21 U.S.C. § 841(b)(1)(B); Pleading Tr. at 36:9-12.

*Ex mero motu*, the court raised the issue of competency to plead. It ordered a psychiatric hearing.

Defendant's base offense level is 30, with a criminal history category of VI. *See* PSR at ¶¶ 52, 62-70. The offense level was decreased by three points pursuant to U.S.S.G. § 3E1.1(a)-(b) for defendant's acceptance of responsibility and increased by four points pursuant to U.S.S.G. § 4B1.1 for defendant's status as a career offender. *Id.* at ¶¶ 52-61. The total adjusted offense level is 31. PSR at ¶ 61. The parties do not object to this calculation. *See* Mar. 21 Hr'g Tr. The Sentencing Guidelines ("Guidelines") imprisonment range is 188 to 235 months (15 to 20 years). *See* U.S.S.G. Ch. 5 Pt. A; PSR at ¶ 107.

Pursuant to the Supreme Court's decision in *United States v. Booker*, the Guidelines are advisory; a sentencing court may depart in the interest of justice as well as statutory concerns

expressed in section 3553(a). *United States v. Booker*, 543 U.S. 220, 245-46 (2005); *see also United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) ("It is now, however, emphatically clear that the Guidelines are guidelines – that is, they are truly advisory. A district court may not presume that a Guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense." (footnote omitted)).

In view of the excessive incarceration rates in the recent past and their unnecessarily deleterious effects on individuals sentenced, society, and our economy, parsimony in incarceration is encouraged. *See, e.g.*, 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary."); National Research Council of the National Academies, *The Growth of Incarceration in the United States, Exploring Causes and Consequences* 8 (2014) ("*Parsimony*: the period of confinement should be sufficient but not greater than necessary to achieve the goals of sentencing policy.").

## IV. 18 U.S.C. § 3553(a) Considerations

As required, the court considered the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

### A. Defendant's Background

Mr. Powell is 28 years old, born in Queens, New York. PSR at 2. His father disappeared early in defendant's life, leaving his mother to bring up six children alone. *Id.* at ¶¶ 76-77; Apr. 17 Hr'g Tr. He was raised by his mother and grandmother under poor economic circumstances. He has one paternal half-brother, who resides in a halfway house after being released from local custody for a drug-related offense. *Id.* at ¶¶ 77-78. He has five maternal half-siblings, one of whom is a co-defendant in the instant case. *Id.* at ¶ 77. Defendant's mother stated that because

5

she was a single parent and worked long hours throughout his childhood, she was not able to give her children as much attention as they required, and "couldn't compete with the streets." *See* Apr. 17 Hr'g Tr.

Defendant has a 9-year old son from a previous relationship. *Id.* at ¶ 80. He has maintained contact with the child and his mother. *Id.* Before his current arrest, Mr. Powell visited his son and provided modest financial support. *Id.* Incarceration has been difficult for the boy, who continually asks when his father will be returning. *Id.* at ¶ 81. Mr. Powell has been living with his current girlfriend since 2013; she remains supportive. *Id.* at ¶ 82.

Mr. Powell's lack of judgment, his inability to read or write, and his limited intelligence are encapsulated in this testimony from a psychiatrist, Dr. Alan M. Goldstein:

> THE WITNESS: . . . His thinking was highly concrete, his vocabulary was borderline retarded, his judgment was severely impaired. His general range of knowledge made it hard to believe . . . that he went through the New York Schools Board of Education; that he was always in special ed, but his ability to proffer from what took place in each classroom appeared to be practically nil. By the time he left high school in the ninth grade, he had completed zero credits out of a possible 68, I believe, that he had taken. His attendance started out at the early grades to be relatively respectable, and with each successive year there was less and less attendance. So, it was not quite a straight line, but it was a steep slope, which I believe reflects the fact that the school was so meaningless there was no purpose to go because there was no learning taking place.
>
> . . .
>
> It was clear from those [school] records and from the mental health records where he had suicide attempts that he was described as illiterate, could not read, could not write, and, again, a number of diagnoses; ADHD, learning disability, and mildly mentally retarded, a term that's no longer used but was used at that time and [was] relatively descriptive.

Mar. 21 Hr'g Tr. at 14:10-25, 16:4-9.

He started taking drugs while he was in the sixth grade. *See id.* at 15:14-24. Prior to his arrest, he was consuming a bottle of liquor per day on weekends, smoking half an ounce of marijuana each day, and ingesting three $10 bags of heroin approximately four times per week. PSR at ¶ 90. He has previously attended substance abuse treatment programs. *Id.* at ¶¶ 91-92.

When Mr. Powell was young, he was diagnosed with bi-polar disorder, depression, and schizophrenia with anti-social traits. *Id.* at ¶ 87. He hears accusatory voices; feelings of anger and isolation are some of the symptoms of his schizophrenia. *Id.* He was prescribed psychotropic medication when he was a child; since being incarcerated, he has been given other medications to treat his depression and bi-polar disorder. *Id.*

Defendant has attempted suicide on a number of occasions; his most recent attempt occurred shortly before his arrest. *Id.* at ¶ 88. He has difficulty concentrating, experiences frequent mood changes, and has borderline intellectual functioning. *Id.* at ¶ 88.

In 2014, Mr. Powell was arrested in Alabama on a charge of domestic violence. *Id.* at ¶¶ 73, 89. Officers who responded to the incident were informed that defendant had mental health issues and that he had not taken his prescribed medication for anxiety. *Id.*

He attended high school from 2002 to 2006 and completed the ninth grade, but he had a 26.9% cumulative average and earned no credits toward his high school diploma. *Id.* at ¶ 94. His reading and writing abilities, as observed by the court, are nil. *Id.*; Mar. 21 Hr'g Tr.

Defendant was briefly employed assisting a newspaper delivery driver and helping a friend deliver packages for a messenger service. *Id.* at ¶¶ 99-102. From 2012 until the time of his arrest, he was receiving government benefits because of his mental health conditions. *Id.* at ¶ 98.

**B.     Psychological Evaluation**

Dr. Goldstein conducted a psychological evaluation of Mr. Powell at the Queens Detention Facility - GEO on April 11, 2016. *See* Expert Report of Alan M. Goldstein, Ph.D., PC, June 6,

2016 ("Expert Report"), at 1. He interviewed defendant at length concerning his personal history and his involvement in the instant offense.

Defendant explained that he was frequently bullied in school. *Id.* at 2. His younger sister, co-defendant Ms. Trappier, often defended him. *Id.* Mr. Powell is extremely loyal to his sister, and he began selling heroin because she convinced him to do so. Mar. 21 Hr'g Tr. at 11:23-12:8, 22:15-21, 24:21-25:6.

Mr. Powell is aware that he suffers from "bipolar disorder and schizophrenia and [is] mentally challenged." Expert Report at 2. He sometimes experiences auditory hallucinations, and has attempted to commit suicide on at least four occasions. *Id.*

Dr. Goldstein reviewed records from Mr. Powell's psychiatric hospitalizations as a young adult, as well as his school records. *Id.* at 1-2. They indicate that defendant was diagnosed with "mild mental retardation" at a young age, suffered from Attention-Deficit/Hyperactivity Disorder ("ADHD") and other learning disabilities, had a poor academic performance, exhibited behavioral problems in school, and has a low level of self-esteem. *Id.* at 2, 6.

The expert witness administered tests to assess Mr. Powell's intelligence and understanding of the charges. *Id.* at 5. On a standardized test used for objectively measuring an adult's intelligence, Mr. Powell scored a Full Scale IQ of 72, a score which 97% of the population would surpass and which falls toward the bottom of the Borderline range of intelligence. He scored a Verbal Comprehension Index of 68, which 98% of the population would surpass, and a Perceptional Reasoning Index of 88, which 79% of the population would surpass. The doctor noted "significant deficits . . . in Mr. Powell's vocabulary, the single most representative ability of overall intelligence." *Id.*

The adverse scores on the tests were not the result of malingering. The expert witness concluded that Mr. Powell did not "ma[ke] a conscious effort to deceive or in some way exaggerate his intellectual and memory impairment." *Id.*

**V.        Legal Standards for Competence**

"When a guilty plea is entered, the defendant waives several federal constitutional rights, including the right to trial by jury, the right to confront his accusers, and the privilege against compulsory self-incrimination." *Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004) (citing *Boykin v. Alabama,* 395 U.S. 238, 243 (1969)). A defendant must meet three requirements before pleading guilty: he must be competent to waive his constitutional rights, the waiver of trial must be knowing, and it must be voluntary.

"A criminal defendant may not be tried unless he is competent, and he may not . . . plead guilty unless he does so competently and intelligently." *Godinez v. Moran,* 509 U.S. 389, 396 (1993) (internal quotation marks and citations omitted). The applicable standard for competence is whether defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Id.* (quoting *Dusky v. United States,* 362 U.S. 402 (1960) (per curiam)); *see also Henderson v. Morgan,* 426 U.S. 637, 645 (1976) (defendant must have an awareness of the true nature of the charge against him to enter guilty plea).

Whether a defendant is competent to plead guilty or stand trial is measured by the same standard. *Godinez*, 509 U.S. at 398 ("[W]e reject the notion that competence to plead guilty or to waive the right to counsel must be measured by a standard that is higher than (or even different from) the *Dusky* standard. . . . while the decision to plead guilty is undeniably a profound one, it

9

is no more complicated than the sum total of decisions that a defendant may be called upon to make during the course of a trial.").

"In addition to determining that a defendant who seeks to plead guilty . . . is competent, a trial court must satisfy itself that the waiver of his constitutional rights is *knowing and voluntary*." *Godinez*, 509 U.S. at 400 (emphasis added) (citing *Parke v. Raley,* 506 U.S. 20, 28-29 (1992)). "In this sense there *is* a 'heightened' standard for pleading guilty . . . but it is not a heightened standard of *competence*." *Godinez*, 509 U.S. at 400-01 (footnote omitted). Even though the standard used to determine whether a defendant can stand trial and can enter a guilty plea is the same, the court must determine whether defendant appreciated the consequences of his plea:

> The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings. *See Drope v. Missouri*, 420 U.S. 162, 171 (1975) (defendant is incompetent if he "lacks the *capacity* to understand the nature and object of the proceedings against him") (emphasis added). The purpose of the "knowing and voluntary" inquiry, by contrast, is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced. *See Faretta v. California*, 422 U.S. 806, 835 (1975) (defendant waiving counsel must be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open'") (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)); *Boykin v. Alabama*, 395 U.S. at 244 (*defendant pleading guilty must have "a full understanding of what the plea connotes and of its consequence"*).

*Id.* at 401 n.12 (emphasis added) (citations altered).

Courts must "exercise the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences." *Saddler v. United States*, 531 F.2d 83, 85-86 (2d Cir. 1976) (internal quotation marks and citation omitted); *Valle-Iglesias v. United States*, No. 10-CV-3223, 2013 WL 2470657, at *7 (E.D.N.Y. June 7, 2013). "The judge must satisfy himself that the defendant has the mental

10

capacity to make a reasoned choice among the alternatives presented." *Saddler*, 531 F.2d at 86 (internal quotation marks and citation omitted).

### A. Defendant's Competence to Enter a Plea of Guilty

Dr. Goldstein, who was not contradicted, concluded that defendant is competent to stand trial. Expert Report at 6. Mr. Powell has a basic understanding of the roles of courtroom staff and the nature of the charges against him, and has a "vague recognition that if found guilty he could be sentenced to less than five years or up to ten years… [and] grasps the advantages and disadvantages of accepting a plea." *Id.*

Competence to plead guilty is doubtful. Dr. Goldstein determined that Mr. Powell does not understand the correlation between the quantity of heroin he helped sell and a higher sentence, leading, together with other facts, to doubts about defendant's ability to knowingly plead guilty. At the sentencing hearing, the doctor testified as follows:

> THE COURT: As I understand it, you say he did not have the mental capacity to understand that if he sold more than a certain amount, here a hundred grams, his punishment would have to be higher?
>
> THE WITNESS: His understanding of math . . . stopped at simple addition of single digits and simple subtraction. His ability to keep a running tally, I think, would really be questionable.
>
> . . .
>
> THE COURT: So would he understand that if he, himself, sold over a certain amount, a hundred grams or a thousand grams, he would get a higher minimum penalty?
>
> THE WITNESS: As he was doing it, in my opinion he was incapable of thinking at that level.
>
> . . .
>
> THE COURT: [I]t is improbable that he would have the capacity to plead and understand what he was pleading to . . . correct?

11

> . . .
>
> THE WITNESS: He is very acquiescent, and I don't believe he has any concept of the quantity. I think when you asked him, you couldn't quite get an answer of how many bags he sold, how much was in each. That involved too much multiplication, too much math for him.

Mar. 21 Hr'g Tr. at 29:18-34:12.

> THE COURT: . . . Would he understand that selling more than a hundred grams would require a higher penalty?
>
> THE WITNESS: I have to say I did not ask him that question, but based on his intellectual level, his thinking, his concrete way of processing information, I don't think that idea would even be able to enter his mind. . . . He was ordered to deliver a package; he knew what was in the package; he knew it was delivered; he got the money, and he returned it. I don't think there is more depth to that.

*Id.* at 28:14-23.

Defendant is found by the court to be competent to stand trial. Despite his "intellectual limitations, his psychiatric history, [with] long-standing clinical depression, his multiple suicide attempts, and his limited judgment and insight," Expert Report at 7, Mr. Powell "grasps information regarding the roles of his attorney, the prosecutor, the judge, and a jury" and he "understands the nature of the charges that have been filed against him." *Id.* at 6.

Applying the competence standard for trial to a defendant's capacity to enter into a guilty plea, Mr. Powell might be found competent to enter a guilty plea. *Godinez*, 509 U.S. at 398. There is no evidence of coercion, and Dr. Goldstein concluded that Mr. Powell understands "the advantages and disadvantages of accepting a plea." Expert Report at 6. He appreciates the nature of a conspiracy, that selling drugs is illegal, and that his prior convictions impact the sentencing guidelines that apply.

12

> MR. LIND [defense counsel]: Now, did you believe that Mr. Powell had sufficient mens rea in order to commit this crime or plead guilty to this crime?
>
> WITNESS [Dr. Goldstein]: From a legal point of view . . . he knew what his sister wanted him to do, and that was to commit a crime. He voluntarily agreed to do it and he went through and he committed the crime; he picked up drugs from another person, delivered money to someone else. So, he was aware that he was committing a crime with at least more than one person.

Mar. 21 Hr'g Tr. at 24:11-20.

But doubts remain. The expert determined that Mr. Powell was not aware of the quantity of drugs he was selling; his intelligence and understanding of mathematics are too limited to comprehend that higher quantities of drugs are associated with higher sentences. *Id.* at 34:8-12. The testimony of Dr. Goldstein as to whether Mr. Powell entered his plea knowingly was equivocal:

> THE WITNESS: . . . I don't believe he has any concept of the quantity. I think when you asked him, you couldn't quite get an answer of how many bags he sold, how much was in each. That involved too much multiplication, too much math for him.
>
> THE COURT: But would he have sufficient capacity to know that he was pleading to the sale of some heroin --
>
> THE WITNESS: Definitely.
>
> THE COURT: -- alone?
>
> THE WITNESS: Definitely.
>
> THE COURT: And with others?
>
> THE WITNESS: Correct.
>
> THE COURT: So he would have the capacity to plead . . . to an amount, but not to an amount of a hundred grams or more, but less than a thousand?

*Id.* at 34:8-34:23.

The expert's determination that Mr. Powell could not differentiate between quantities of heroin is not decisive. A defendant convicted of possessing drugs may be sentenced for the total quantity of drugs in his possession even if he thought he possessed a lesser quantity. *See United States v. Imariagbe,* 999 F.2d 706, 707 (2d Cir. 1993) (per curiam); *United States v. de Velasquez*, 28 F.3d 2, 3 (2d Cir. 1994) ("We now conclude that, as a general proposition, a defendant may be sentenced for the entire quantity of drugs in his possession even if the total quantity was not foreseeable.").

Following binding precedent, defendant's guilty plea in the instant case might be accepted. But the court is troubled by the conclusion that because Mr. Powell is capable of pleading to distribution of *some* heroin, it must accept a plea as to *a specific quantity* of heroin. The minimum term of incarceration is entirely dependent on the quantity of heroin to which defendant pled. As a medical fact that is uncontroverted by other evidence, Mr. Powell is incapable of distinguishing the quantity of heroin he is charged with distributing and the quantity to which he is pleading.

There is a practical difference in the competence needed to stand trial where defendant can be passive, and the competence needed to plead, where defendant needs to act in evaluating options and to make a serious decision that can lead to a long prison term. Pleading guilty to a specific quantity of heroin – which triggers a minimum term of incarceration – requires a level of intellectual comprehension that standing trial does not.

The court is satisfied that Mr. Powell generally understood that selling a lower amount of heroin could lead to a lower term of incarceration, even if he did not comprehend the connection between a minimum term of incarceration and the statutory 100 grams.

> THE COURT: Does he understand, having heard the doctor's opinion . . . that he is pleading to an amount and if he sold less than that amount it would be a different sentence? Does he understand that?

> MR. LIND [defense counsel]: I believe that he understands that if he sold a lesser amount there could be a lesser sentence.
>
> THE COURT: But does he understand the minimum amount concept that is incorporated in this plea?
>
> MR. LIND: My recollection is that he did, Judge. I read . . . the plea letter . . . it's mentioned in there that there is a minimum amount of a hundred grams.
>
> THE COURT: In his plea?
>
> MR. LIND: Yes.
>
> THE COURT: But did he understand what he was talking about when he pled?
>
> MR. LIND: My recollection is that he did, Judge. I went over this a number of times with him --
>
> THE COURT: I see.
>
> MR. LIND: -- before he pled guilty.
>
> THE COURT: And you have that opinion, even after hearing what the expert said?
>
> . . .
>
> MR. LIND: Initially, he was charged with a (b)(1)(A). And then I had the resources of a psychologist come along and based on his evaluation . . . we were able to persuade the Government to come down from a (b)(1)(A) to a (b)(1)(B). . . . [H]is guidelines range is astronomical. . . . And I was satisfied . . . that getting down to (b)(1)(B) would have been a good deal for this individual . . . .
> And I believed that . . . the Government would not go below a (b)(1)(B). But I did believe that . . . my client understood that he was involved in this drug dealing on a daily basis that . . . met the definitions of a (b)(1)(B), rather than (b)(1)(A).

Mar. 21 Hr'g Tr. at 35:17-37:25.

### B. Practical Considerations

Defendant, his counsel, and the government have reached an agreement. It would be cruel to force defendant to undergo an unnecessary trial after which he probably would receive a much higher penalty.

> THE COURT: So your position is if he could not plead in a meaningful way to a crime for which the punishment had five-year minimums attached, then the Government, since it had a grand jury Indictment, would be entitled to try him under a theory of a thousand grams, which would lead to a higher minimum, right?
>
> MS. BERENSON [prosecutor]: Yes, Your Honor.
>
> THE COURT: . . . So if I do not take the plea, he is subject to trial and a possible [10-year term].
>
> . . .
>
> That is the dilemma . . . and that is why defense counsel talked his client into, I take it, taking the five-year plea, right?
>
> MR. LIND [defense counsel]: Correct, Judge.

*Id.* at 38:1-19.

The court questioned defendant's mother and his counsel. Both agree that pleading to a five-year minimum is a "good deal" for defendant. Mar. 21 Hr'g Tr. at 37:15-17; *see also* Apr. 17 Hr'g Tr. If defendant went to trial the proof against him would be overwhelming. The result would be a mandatory 10-year minimum sentence. The court made it clear that it believed a 10-year sentence would result from a gross overcharge, and a five-year sentence would result from a substantial overcharge by the prosecution.

> THE COURT: Here is the dilemma we are in. The doctor says [in his opinion] [defendant] [is competent to] stand trial . . . but he does not understand enough to plead. So, if I reject the plea of five years that has been offered on the grounds that I am following the doctor who [opines] [defendant] cannot . . . plead [with full comprehension], the government will go to trial, I take it, on a ten year [sentence].

16

> . . .
>
> MS. BERENSON [prosecutor]: Your Honor, if the case proceeds to trial, he's been charged with an indictment that has a ten year mandatory minimum count. I should note, however, that the government does not believe that the expert testified that he doesn't have the ability --
>
> THE COURT: I understand your position.
>
> MS. BERENSON: -- to plead.
>
> THE COURT: I am saying if I refuse to take the five year [option] following [the doctor's view, as I understand it], you will go forward . . . based on the indictment . . . and you will go to trial and if the jury finds that he is liable for ten years by rejecting at least part of what the doctor says, he goes away for ten years, so that is why he is willing to plead five. That is our situation. The only [additional factor] in that equation . . . is . . . if . . . the trial . . . [goes] against him, I [might] find that as a matter of fact there was not sufficient evidence because of what the doctor said [about mens rea at the time of the alleged crime], that [would be] the end of the matter. It is double jeopardy. [I would probably not do that all of us assume.] Do you follow?
>
> MR. LIND [defense counsel]: I'm following you, Judge.
>
> THE COURT: I think that lays out where we are in connection with the dilemma that we have.
>
> . . .
>
> I think the defense counsel has acted with . . . discretion and appropriately, I think the [United States] Attorney has acted with . . . discretion . . . and we have the doctor's opinion. So, that is where we stand and I have to decide now whether I am going to take that plea. That is the issue before us at the moment. If I take the plea, I will give him five years. I think everybody appreciates that.

Mar. 21 Hr'g Tr. at 44:13-46:5.

## VI. Sentence

Under section 3553(a)(2)(B) of title 18, a sentencing court must consider two major factors: general and specific deterrence.

17

In light of the nature of the offense and the characteristics of the defendant, Mr. Powell is sentenced to five years of incarceration, the statutory minimum. *See* Apr. 17 Hr'g Tr. A $100 special assessment is imposed. 18 U.S.C. § 3013. No fine is desirable because of defendant's inability to pay one. *See* Apr. 17 Hr'g Tr.; PSR at ¶ 105. Four years of supervised release is ordered. *See* Apr. 17 Hr'g Tr.

General and specific deterrence are achieved by the sentence imposed. Mr. Powell pled guilty to a serious offense. He has expressed remorse for his conduct and understands the gravity of his actions. Once he has served his sentence, he will have reached an age at which recidivism is less likely. *See* U.S. Sentencing Comm'n, *Recidivism Among Federal Drug Offenders* 3 (2016) (finding a close association between "[a] federal drug trafficking offender's age at time of release into the community . . . [and] likelihood of recidivism").

The court recommends that the Bureau of Prisons keeps defendant as close to New York City as is practicable so his family can visit, that it provides adequate psychiatric treatment, and that precautions are taken to assure safety from sexual and other attacks without excessive use of solitary confinement.

## VII. Conclusion

All relevant elements of the Guidelines and statutes have been considered. Full *Fatico* hearings were conducted. Respectful consideration was given to the Sentencing Commission's policy statements, and all other factors listed under section 3553(a) of title 18, to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

SO ORDERED.

*Jack Weinstein* (signature)

Jack B. Weinstein
Senior United States District Judge

Date: April 18, 2017
      Brooklyn, New York